UNITED STATES of America,
Plaintiff-Appellee,

v.

Homer HOSKINS and John Hoskins,
Defendants-Appellants.

Nos. 81–5864, 81–5865.

United States Court of Appeals,
Sixth Circuit.

Argued July 29, 1982.

Decided June 8, 1984.

Larry G. Bryson (argued), Bledsoe, Little & Bryson, London, Ky., Eldon Webb, Federal Public Defender, Lexington, Ky., for defendants-appellants.

Joseph Famularo, U.S. Atty., Barbara B. Edelman, James Zerhusen (argued), Asst. U.S. Attys., Lexington, Ky., for plaintiff-appellee.

Before JONES and CONTIE, Circuit Judges, and NICHOLS, Senior Circuit Judge.*

NATHANIEL R. JONES, Circuit Judge.

This case is currently before the Court upon the consolidated appeals of Homer and John Hoskins from their jury convictions for the manufacture and possession of marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). Upon initial consideration, this Court ordered that the instant action be held in abeyance pending the Supreme Court's review of our decision in *Oliver v. United States*, 686 F.2d 356 (6th Cir.1982). In light of the Supreme Court's disposition of *Oliver*, we are now compelled to affirm appellants' convictions.

The facts relevant to this appeal are largely uncontroverted. Acting on a tip from an anonymous informant, the Kentucky state police flew over appellants' property searching for marijuana plants. On July 31, 1981, the police spotted what they believed to be a marijuana patch. On August 4, 1981, several members of the state police and a german shepard travelled over a mountain and through a hollow toward the rear of the Hoskins' property. A private road in front of the property contained a posted, but overgrown "no-trespassing" sign.

The officers passed by the sign on to the Hoskins' property. They approached John Hoskins, who informed them that he owned the property and allowed them to search the area. He stated that he believed that one of the officers, Detective Loomis, knew the contours of his property. The officers

---

* Honorable Philip Nichols, Jr., United States Court of Appeals for the Federal Circuit, sitting by designation. Assumed Senior Status October 1, 1983.

also approached Homer Hoskins, who gave them permission to search for marijuana and assisted them in finding the illicit crop.

The officers found a large marijuana plot, located about one-hundred yards from John Hoskins' house. The patch was not visible from the public road, but could be seen by any one approaching the Hoskins' homes. Federal agents, acting without a warrant, seized approximately two-thousand marijuana plants from appellants' land.

After they were indicted for violating 21 U.S.C. § 841(a)(1), appellants moved to suppress the evidence of marijuana. The district court denied that motion. Appellants were then convicted by a jury of manufacturing and possessing marijuana with the intent to distribute. Appellant's sole contention on appeal is that the agents' warrantless search and seizure of marijuana plants on their land violated the Fourth Amendment.

We now are forced to reject that contention in light of the Supreme Court's decision in *United States v. Oliver*, —— U.S. ——, 104 S.Ct. 1735, 80 L.Ed. 214 (1984). In *Oliver* two officers of the Kentucky State Police Department, acting on tips that marijuana was growing on petitioner's farm, walked toward the suspect field, passed a locked gate with a "No Trespassing Sign", ignored verbal warnings and found incriminating marijuana plants. The Supreme Court adopted this Court's analysis in *Oliver* and held "that the government's intrusion upon the open fields is not one of those 'unreasonable searches,' proscribed by the text of the Fourth Amendment." Relying upon *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the Court found no "reasonable expectation of privacy" in open fields which are not "surrounding and associated with the home." —— U.S. at ——, 104 S.Ct. at 1740. Although the Supreme Court has often in past cases expanded the plain meaning of the Fourth Amendment's protection of persons, houses, papers and effects to include, for example, a public telephone booth and a public conversation,

*see Katz*, 389 U.S. at 347, 88 S.Ct. at 507, and has exempted from its current holding "curtileges," *see Oliver*, —— U.S. at ——, 104 S.Ct. at 1742, the Court decided in this particular case to restrict the Amendment's scope to those items explicitly mentioned. An open field, the Court stated, is not mentioned in and therefore not protected by the Fourth Amendment.

In addition, according to *Oliver*, society apparently is no longer prepared to recognize as "reasonable," *see Katz*, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J. concurring), any privacy interest in some parts of a landowner's property. Over a vigorous dissent which argued that the expectation of privacy in one's property is rooted deeply in (1) positive law, citing *Rakas v. Illinois*, 439 U.S. at 153, 99 S.Ct. at 435 (2) the private manner in which such property is used, citing *Rakas*, 439 U.S. 128, 153, 99 S.Ct. 421, 435, 58 L.Ed.2d 387 (1978) (Powell, J. concurring); *United States v. Chadwick*, 433 U.S. at 1, 13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977) and (3) the owner's manifestation of the privacy of that property, citing *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), the Court decided that individuals in this country can now only expect privacy in an area "adjacent to the home." —— U.S. at ——, 104 S.Ct. at 1742.

*Oliver* forces us to conclude, therefore, that the Fourth Amendment does not protect fields which are open and not adjacent to an otherwise protected area. Hence, the Hoskins' reliance upon the Fourth Amendment on appeal from their jury convictions for violating § 841(a)(1) is, at this moment in the Supreme Court's understanding of that Amendment's protections, misplaced. The facts of the case before us fall within the sweep of *Oliver's* language. As in *Oliver*, law enforcement authorities entered the Hoskins' land, passed an overgrown "no trespass" sign and discovered marijuana in a field which was open and not in any way "adjacent" to an area protected by the Fourth Amendment. *See Oliver*, —— U.S. at ——, 104 S.Ct. at 1742. Because the agents discovered marijuana

in a field, both open and non-adjacent to an area in which the Hoskins have a reasonable expectation of privacy, their search for and seizure of that evidence, we are compelled to find, is not prohibited by the Fourth Amendment. We conclude, therefore, that the district court properly denied the Hoskins' motion to suppress the evidence seized pursuant to *Oliver's* "open fields" exception to the Fourth Amendment's warrant requirement. Accordingly the district court's judgments are hereby AFFIRMED.

NICHOLS, Senior Circuit Judge, concurring.

I concur in the judgment and in the reasons given except I would not use the words "compelled" or "forced" to describe the impact of the Supreme Court's *Oliver* decision upon my thinking. "Led" would be more to my taste. It is not true that but for our highest tribunal having spoken, I would have gone the opposite way. Actually, there was an important difference in the cases. The possibility of marijuana plantations being detected from the air was a mere speculation in *Oliver*, yet is referred to there as tending to undermine the reasonableness of the grower expecting privacy in his illicit activity, even though in fact such surveillance did not occur. In this case it did occur and was the origin of the enforcement officer's suspicions. What was seen from the air would, I should think, have afforded probable cause if a warrant had been applied for. By modern aviation law, as I understand it, aircraft are free to come and go at over 500 feet without trespass upon the rights of the surface landowner. There was no suggestion the enforcement officers used or needed any kind of unusual or sophisticated equipment to detect the marijuana. There is nothing clandestine or secret about a helicopter thundering overhead.

I would have held, therefore, that the marijuana was in "plain view," just as if it could have been seen from the highway and one who places an article in such plain view has no reasonable expectation that it will not be seen. I would have thought, though *Oliver* was decided by divided tribunals, both in this and in the Supreme Court, some of the dissenters in either place might reasonably have been persuaded by the factual differences in this case. It was the major premise of both dissents that *Oliver*, by "no trespassing" signs, locked gates, etc., did what he could to assure privacy, and presumably the result would have been different, in the eyes of dissenters, had he not done so. The defendants here did nothing to keep helicopters away, and nothing to conceal what might have been seen from them, the plantation being wide-open to aerial view. The marijuana plant is distinctive. Once one is seen, others are readily recognized.